**CALIFORNIA–NEVADA METHODIST HOMES, INC., a California corporation, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, an agency of the United States of America; Joe M. Allbaugh, Executive Director of the United States Federal Emergency Management Agency, Defendants.**

**No. C 01–0917 WHA.**

United States District Court, N.D. California.

July 10, 2001.

---

**5.** The disposition of the seized hard drives has already been resolved by joint stipulation of the parties.

Paul A. Gordon, Gilson S. Riecken, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, for Plaintiff.

Suzanne G. Ramos, U.S. Attorney's Office, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; VACATING HEARING

ALSUP, District Judge.

### INTRODUCTION

This case poses the question of whether decisions made by the Federal Emergency Management Agency regarding the allocation of earthquake-relief funds are subject to judicial review. This order holds that Congress intended to preclude this type of suit. Accordingly, defendants' motion to dismiss is **GRANTED**. The hearing is **VACATED**.

### STATEMENT

The following well-pled facts taken from plaintiff's complaint are presumed to be true for the purpose of this Rule 12 motion. Plaintiff is a non-profit organization that owns and operates Lake Park, a retirement community in Oakland. Lake Park is a 12–story L-shaped building, divided into two wings. One floor on one of the wings contains a skilled-nursing facility, which provides 24–hour nursing care to residents who require assisted living. In

1989, Lake Park was damaged in the Loma Prieta earthquake. Plaintiff subsequently sought disaster-relief funds.

The Stafford Act, 42 U.S.C. 5124–5204c, and FEMA's regulations establish different regimes for the provision of federal relief to victims of natural disasters. In general, the Act and accompanying regulations define who is eligible to obtain aid from FEMA and what types of costs are eligible for recovery. Under the regime at issue here, the Public Assistance Project, 44 C.F.R. 206.200–228, once the president declares an area to be a "major disaster," victims of the disaster can apply for federal assistance through a state agency (the Governor's Office of Emergency Services in California), which forwards the request to FEMA. Either a FEMA inspector, state representatives, or both then prepare a project worksheet for each discrete project for which the applicant (subgrantee) seeks funding. 44 C.F.R. 206.202(d). The project worksheet must specify the damage caused by the disaster and "must identify the eligible scope of work and must include a quantitative estimate for the eligible work." *Ibid.* Before FEMA obligates any funds to the state agency (grantee), FEMA must approve the final project worksheet, and the state agency must submit two different application forms (SF 424 and SF 424D) for FEMA approval. 44 C.F.R. 206.202(e). FEMA then "obligate[s] funds to the Grantee based on the approved Project Worksheets. The Grantee will then approve subgrants based on the Project Worksheets approved for each applicant." *Ibid.*

Pursuant to this regime, between 1989 and 1996, FEMA granted plaintiff more than $10 million.[1] On July 10, 1997, however, FEMA refused to approve an additional $573,364 in relief that plaintiff requested. This money, plaintiff claimed, was necessary to construct separate utilities for the skilled-nursing facility. According to plaintiff, state authorities mandated the construction of separate utilities, because this was required by the California Building Code. FEMA regulations, plaintiff argues, define eligible costs to include costs necessary to meet code standards in effect as of the date of the disaster. Even though the Building Code at the time of the earthquake required separate utilities, plaintiff contends, because plaintiff's skilled-nursing facility was built under an older, less-stringent version of the building code, it shared common utilities with the rest of the building.

After FEMA denied plaintiff's request to fund the utility work, plaintiff filed an appeal with FEMA. On June 4, 1999, FEMA denied the portion of the appeal related to funding for the skilled-nursing facility. According to FEMA, the appeal was denied because the work was required "as a result of the subgrantee's failure to plan for and schedule required inspections. Because this work was not required as a direct result of the disaster or by an applicable code, it is not eligible for funding" (Federal Subgrantee Closeout and First Appeal dated June 4, 1999, at 6). Plaintiff then filed a second appeal to FEMA's associate director, which was denied on May 31, 2000. Both appeals, plaintiff alleges, were denied based upon an erroneous construction of the California Building Code. Plaintiff seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. 2201, judicial review of the denial of its appeals under the Administrative Procedure Act, 5 U.S.C. 701–06, and alternatively to compel FEMA to approve funding for the construction of separate utilities pursuant to the Mandamus Act, 28 U.S.C. 1361.

---

1. Defendants contend that less money was awarded, but this factual dispute is irrelevant to the resolution of this motion.

## ANALYSIS

The provision of the Stafford Act central to this case is Section 5148, which provides:

The Federal Government shall not be liable for any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

"This provision precludes judicial review of all disaster relief claims based upon discretionary actions of federal employees." *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1005 (9th Cir.1998). The nub of this motion is whether FEMA's alleged failure to properly construe California law and thus approve funds for plaintiff was a discretionary act, immune from judicial review.

No decision has precisely addressed when FEMA's relief-disbursement decisions under the Public Assistance Project are subject to judicial review. In *Graham*, however, the Ninth Circuit addressed FEMA's discretion under a different portion of the Stafford Act, the Individual and Family Grant Program. The Individual and Family Grant Program requires a state to submit a proposed plan to FEMA to obtain funding. Once the plan is approved, FEMA pays the state 75% of costs incurred by the state in administering the program. In *Graham*, the Federated States of Micronesia, an eligible grantee under the Stafford Act, submitted a proposal to FEMA for providing relief to its citizens. In part, Micronesia agreed to provide relief funds to eligible citizens, to provide appeals to unsuccessful applicants, and to grant meritorious appeals supported by documentation. FEMA approved the proposal. Subsequently, after FEMA determined that Micronesia was allegedly approving claims without requiring proper documentation, FEMA stopped paying its portion of the claims, including claims that had already been approved by Micronesia.

The court found that FEMA's decision to withdraw funds was not purely discretionary. First, it noted that construing Section 5148 involved reconciling the "seemingly contradictory" principles that a party suing the United States "bears the burden of demonstrating an unequivocal waiver of immunity" and the "strong presumption that Congress intends judicial review of administrative action." *Id.* at 1005. Relying on *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), which set forth the standard for determining whether acts are discretionary under the Federal–Tort–Claims Act, it held that the discretionary-function "exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for [the agency] to follow." *Ibid.* (quotation omitted). The court then examined FEMA's regulations regarding withdrawal of funds under the Individual and Family Grant Program, which provided that FEMA "may" withdraw funds if a grantee "has failed to comply with the grant award conditions." *Id.* at 1005. It rejected FEMA's argument that the word "may" gave FEMA unreviewable discretion, because the "Stafford Act's regulations grant FEMA the discretion to withhold individual and family grant funds only if the grantee-state has not complied with the award conditions." *Id.* at 1006. It noted that FEMA's regulations provided that if a state had complied with the award conditions, FEMA *"shall not withhold* payments." *Id.* at 1006 (citing 44 C.F.R. 13.21(g)(1)) (emphasis in original). Whether Micronesia had complied with the award conditions, the court held, was a question of fact that could not be resolved on a Rule 12 motion. *Id.* at 1007.

Plaintiff likens the present case to *Graham*. According to plaintiff, FEMA's regulations require FEMA to approve all requests for eligible costs. Since the costs of installing separate utilities for the skilled-nursing facility were eligible costs based on a proper construction of the California Building Code, plaintiff argues, FEMA had a non-discretionary duty to approve its request for funding. Plaintiff relies on 44 C.F.R. 206.205(b), which provides in part:

(1) The Grantee shall make an accounting to the RD [Regional Director] of eligible costs for each approved large project. In submitting the accounting the Grantee shall certify that reported costs were incurred in the performance of eligible work, that the approved work was completed, that the project is in compliance with the provisions of the FEMA–State Agreement . . .

(2) The RD *shall* review the accounting to determine the eligible amount of reimbursement for each large project *and approve eligible costs*. If a discrepancy between reported costs and approved funding exists, the RD may conduct field reviews to gather additional information. . . . If the RD determines that eligible costs exceed the initial approval, he/she will obligate additional funds as necessary.

According to plaintiff, the italicized language requires FEMA to approve all requests for funding for all eligible work performed by an eligible applicant. On its face and in context with the regulations applicable to the Public Assistance Project, however, this regulation only applies to costs that have already been "approved." It does not require FEMA to approve every eligible cost requested by an applicant merely because it is eligible: it simply requires FEMA to pay costs incurred in the performance of work that it has already approved, if these costs are eligible. As already noted, the initial approval of funding requests is governed by 44 C.F.R. 206.203(e), entitled "Grant Approval." Under that regulation, FEMA must approve the final project worksheets and the two forms submitted by the state before any funds are obligated. No mandatory standard for approval of these forms is given. The section cited by plaintiff is entitled "Payment of Claims." This regulation requires the state agency to provide FEMA with an accounting of the work performed by the subgrantee, and it requires FEMA to review the actual work done, to pay all eligible expenses for work it has already approved, and to obligate funds "as necessary," if the actual costs exceed the pre-approved budget. This regulation is inapplicable here, because according to plaintiff, FEMA did not approve funding for building separate utilities for the skilled-nursing facility (Compl.¶¶ 30–31).

■ This case is unlike *Graham*, because *Graham* involved the withdrawal of funds that were previously obligated, and FEMA was required by regulation to make certain findings before withdrawing the funds. In contrast, this case involves the decision to obligate funds, for which no mandatory standard exists. Section 5172 of the Stafford Act provides that the President *"may* make contributions" to eligible entities, such as plaintiff. The "Grant Approval" section of FEMA's regulations pertaining to the Public Assistance Project does not contain any requirement that FEMA approve eligible costs or any standard for their approval. No regulation under the Public Assistance Project requires FEMA to approve any funding request. Rather, these regulations simply refer to costs that are "eligible," *i.e.*, expenses that FEMA could choose to pay. *E.g.*, 44 C.F.R. 206.226. Whether to approve requests for eligible costs is a matter of agency discretion, immunized by 42 U.S.C. 5148. As the Ninth Circuit stated in *Graham*, "decisions involving the alloca-

tion and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit." 149 F.3d at 1006 (quotation omitted).

In a similar case, *United Power Association v. Fed. Emergency Mgmt. Agency*, No. A2 99–180, 2000 WL 33339635 (D.N.D. Sept. 13, 2000), FEMA denied United Power's request for funding to repair damage to its power plant that allegedly resulted from a flood. The court held that this decision was unreviewable based on the discretionary-function test from *Berkovitz*. Under this test, "a court must first consider whether the action is a matter of choice for the acting employee," *i.e.*, whether it "involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954. Next, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Ibid.* The court in *United Power* reasoned that the "determination of eligibility, including the decision of whether an item of work is required as the result of a major disaster event, necessarily involves the judgment of the decision-maker." 2000 WL 33339635 at *3. It further agreed with *Graham* that decisions involving the allocation of resources are precisely the type of administrative judgment that the discretionary-function exception was designed to immunize from suit. *Id.* at *4. Plaintiff argues that *United Power* is not on point, since FEMA approved some repairs to plaintiff's facility, whereas in *United Power*, FEMA did not approve any repairs at all (Br.8). There is no meaningful basis for this distinction, because under FEMA's regulations governing the Public Assistance Project, approval of all funding decisions, regardless of whether FEMA has approved other repairs and regardless of whether the expenses are eligible, is entirely discretionary.

■ Section 5148 precludes plaintiff's lawsuit. The decision to fund (or not fund) repairs necessarily involves the judgment of the decision-maker and is therefore discretionary. Moreover, decisions regarding the allocation of resources are precisely the type of action Congress sought to protect. *Graham*, 149 F.3d at 1006. This conclusion is supported by the legislative history of the statute. As other courts construing 42 U.S.C. 5148 have noted, the purpose of this provision, according to Representative Whittington, Chairman of the House Public Works Committee, was to bar the type of action at issue here:

We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government may not be sued. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other relief acts, suits ... because citizens have averred that the agencies and employees of the Government made mistakes. We have put a stipulation in here that there shall be no liability on the part of the Government.

*Ornellas v. United States*, 2 Cl.Ct. 378, 380 (1983) (quoting HR 8396, 81st Cong., 2d Sess., 96 Cong. Rec. 11895, 11912 (1950)) (ellipses in original); *see also Dureiko v. United States*, 209 F.3d 1345, 1352 (Fed. Cir.2000) (quoting same); *Rosas v. Brock*, 826 F.2d 1004, 1008, n. 1 (11th Cir.1987) (quoting same). Indeed, "Congress was concerned not only about the possible costs of paying damages, but also the certain costs of defending suits arising from government relief. Of course, the costs of defense involve both energy expended by governmental administrators participating in litigation and money—money that might be otherwise available for direct disaster relief." *Rosas*, 826 F.2d at 1007. Because the acts for which plaintiff seeks review

were discretionary and because Congress intended to shield such acts from litigation, plaintiff's APA and declaratory relief claims must be dismissed. Additionally, plaintiff's request for mandamus is dismissed, because plaintiff seeks to compel a discretionary function for which there is no binding regulation, not a ministerial duty. *Barron v. Reich,* 13 F.3d 1370, 1376 (9th Cir.1994).

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED**. The hearing is **VACATED**. The Clerk shall close the file.

IT IS SO ORDERED.