REVISED FEBRUARY 19, 2009

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 22, 2009

No. 08-30070

Charles R. Fulbruge III
Clerk

ST TAMMANY PARISH, by and through its President, Kevin Davis

Plaintiff - Appellant

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY; DEPARTMENT OF
HOMELAND SECURITY

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, DeMOSS, and PRADO, Circuit Judges.

KING, Circuit Judge:

We are asked to determine whether the discretionary function exception
of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42
U.S.C. § 5148, bars a suit based on the federal government's decision not to
approve funding for debris removal in the aftermath of Hurricane Katrina.
St. Tammany Parish brings this lawsuit against the Federal Emergency
Management Agency and the Department of Homeland Security because they
denied funding for the removal of sediment deposited in the canals within St.
Tammany Parish's Coin du Lestin community. The district court dismissed the

case for lack of subject matter jurisdiction after concluding that the United States has not waived sovereign immunity for its agencies' discretionary funding decisions. We agree that the agencies' decision not to fund the removal of the sediment was discretionary and therefore affirm.

## I. FACTUAL, REGULATORY, AND PROCEDURAL BACKGROUND

### A.   Factual History and Relevant Regulations

On August 29, 2005, Hurricane Katrina made landfall along Louisiana's Gulf of Mexico coast. As a result, President George W. Bush declared that a major disaster existed in the State of Louisiana and initiated the federal government's involvement in the hurricane recovery effort.[1] *See* Notice of the Presidential Declaration of a Major Disaster for the State of Louisiana, 70 Fed. Reg. 53,803-01 (Sept. 12, 2005). The President exercised his authority to declare major disaster areas pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121–5208. *See* 42 U.S.C. § 5122(2) (defining major disaster by reference to presidential determination); *see also* 44 C.F.R. § 206.38(a) ("The Governor's request for a major disaster declaration may result in either a Presidential declaration of a major disaster or an emergency, or denial of the Governor's request.").

After the President declares a major disaster, the Stafford Act states that "[f]ederal agencies may on the direction of the President, provide assistance

---

[1] On August 27, 2005, anticipating that Hurricane Katrina would strike the Gulf coast, President Bush declared that an emergency existed in Louisiana and authorized federal authorities to coordinate and assist the state government as the storm approached. *See* Notice of the Presidential Declaration of an Emergency for the State of Louisiana, 70 Fed. Reg. 53,238-01 (Sept. 7, 2005). The relevant declaration for the purposes of the events at issue here, however, is the President's August 29, 2005 declaration that a major disaster existed in Louisiana due to the damage caused by Hurricane Katrina. *See* 70 Fed. Reg. at 53,803.

essential to meeting immediate threats to life and property resulting from [the] major disaster." 42 U.S.C. § 5170b(a). It permits federal agencies to assist in "debris removal" where it is "essential to saving lives and protecting and preserving property or public health and safety." *Id.* § 5170b(a)(3)(A). Section 5173 of the Stafford Act likewise states that "[t]he President, whenever he determines it to be in the public interest, is authorized . . . to make grants to any State or local government . . . for the purpose of removing debris . . . resulting from a major disaster from publicly or privately owned lands and waters." *Id.* § 5173(a)(2).

The Stafford Act authorizes the President to delegate his authority under the Act to a federal agency. *See id.* § 5164. The President exercised this option and delegated most of his authority to the Federal Emergency Management Agency ("FEMA"), which is now part of the Department of Homeland Security ("DHS") (collectively, "defendants" or the "government"). Exec. Order No. 12,673: Delegation of Disaster Relief and Emergency Assistance Functions, 54 Fed. Reg. 12,571, § 1 (Mar. 23, 1989). In turn, FEMA promulgated certain regulations pursuant to the Stafford Act establishing the qualifications and procedures related to federal assistance for debris removal. *See* 44 C.F.R. § 206.224. The implementing regulations establish that debris removal must be in the "public interest" in order to be eligible for funding. *Id.* § 206.224(a). Debris removal is in the public interest when it is, *inter alia*, necessary to "[e]liminate immediate threats to life, public health, and safety." *Id.* § 206.224(a)(1). "Upon determination that debris removal is in the public interest, the Regional Director [, a FEMA official,] may provide assistance for the

removal of debris and wreckage from publicly and privately owned lands and waters." *Id.* § 206.224(a).

Under the regulations, a specific project must be documented in a Project Worksheet, FEMA Form 90-91 ("PW"). *See id.* § 206.202(d). The Regional Director, or a designee, is charged with "review[ing] and sign[ing] an approval of work and costs on a Project Worksheet," *id.* § 206.201(j), and will then "obligate funds to the Grantee based on the approved Project Worksheet," *id.* § 206.202(e)(1). *See also id.* § 206.201(i)(1) (authorizing FEMA to "approve a scope of eligible work and an itemized cost estimate before funding a project").

The President's August 29, 2005 declaration that a major disaster existed in Louisiana as a result of the damage caused by Hurricane Katrina in certain areas authorized FEMA "to allocate from funds available for these purposes such amounts as you find necessary for Federal disaster assistance and administrative expenses." 70 Fed. Reg. 53,803-01, at 53,803. The declaration also authorized FEMA "to provide . . . assistance for debris removal." *Id.* The President specifically identified St. Tammany Parish ("plaintiff" or the "Parish") as a municipality eligible for such assistance. *Id.*

Pursuant to the Stafford Act and its accompanying regulations, FEMA issued Recovery Policy 9523.13 to help facilitate debris removal from private property after Hurricane Katrina. *See* FEMA, Debris Removal from Private Property: Recovery Policy 9523.13 (Oct. 23, 2005)*, amending and replacing* Recovery Policy 9523.13 (Sept. 7, 2005). Recovery Policy 9523.13 provides that:

> Hurricanes Katrina and Rita in some areas created catastrophic, widespread destruction resulting in vast quantities of debris which may require state or local government to enter private property to remove it in order to prevent disease and other immediate public health and safety threats. In these situations, debris removal from

4

> private property may be in the public interest and thus may be eligible for reimbursement, when the unconditional authorization for debris removal and indemnification requirements established by Sections 403 and 407 of the Stafford Act are met.

Recovery Policy 9523.13, at § 6(C). It offers guidance for reimbursing "state, county, and municipal governments for costs incurred in debris removal from private property." *Id.* at § 7. Section 7 of the Policy provides that FEMA will work with local governments to determine areas in which such debris removal "is in the 'public interest' under 44 C.F.R. § 206.224 and thus is eligible for FEMA reimbursement," § 7(A); requires the local government to submit a written request seeking reimbursement, *see* § 7(C); and grants FEMA the authority to approve or disapprove each request, *see* § 7(H). To clarify Recovery Policy 9523.13's application, Nancy Ward, FEMA's Director of the Recovery Area Command, issued a memorandum to FEMA's field offices that declared that "it is in the public interest to remove debris from private property because an immediate threat to public health and safety exists in" the Parish, thus satisfying § 7(A) of the Policy. *See* Memorandum from Nancy Ward, Recovery Area Command Director, to FEMA Joint Field Offices (Sept. 10, 2005) (the "Ward Memorandum").

On September 12, 2005, the Parish filed a "Request for Public Assistance" for debris removal from public and private property within its jurisdiction. Part of the request sought debris removal from private canals in Coin du Lestin. Coin du Lestin, a private community consisting of approximately 250 residential homes, sits in the eastern part of the Parish. Coin du Lestin utilizes an above-ground drainage system that consists of drainage ditches, drains, and culverts. The drainage system is connected to a number of canals, which, in turn, drain

into Bayou Bonfouca and then Lake Pontchartrain. The Coin du Lestin canals were navigable prior to Hurricane Katrina, reaching a depth of at least ten feet. Hurricane-related flooding, however, deposited construction and demolition ("C&D") materials, a boat, a submerged vehicle, as well as silt, mud, and vegetative materials, into the canals. Citing a potential flood hazard due to clogging in the Coin du Lestin canals, the Parish requested funding for removal of C&D debris and for the dredging of the canals to a depth of eight feet from bank to bank. The proposed scope of work included the removal of approximately 500,000 cubic yards ("CY") of debris.

In response, FEMA issued PW 2981, authorizing some, but not all, of the Parish's requested funding for debris removal from the Coin du Lestin canals. *See* FEMA, Project Worksheet Report 2981 (Feb. 6, 2006). According to PW 2981, FEMA debris specialists conducted an assessment of the canals on February 2, 2006, "to estimate the amount of debris in the canals that posed an immediate threat to improved property, public health and safety." *Id.* at 14. FEMA specialists determined that:

> [H]igh winds and storm surge associated with Hurricane Katrina . . . caused an estimated 130 CY of C&D debris and one (1) recreational boat to be deposited in the St. Tammany Coin [du ]Lestin canals. The canals serve as access to the surrounding area and are within close proximity to parish residences; therefore, the debris is considered an immediate threat to public health and safety. Also deposited in the canals were large quantities of marsh grass.

*Id.* at 2. As a result of this assessment, FEMA authorized funding for removal of approximately 130 CY of C&D debris and the recreational boat. FEMA, however, determined that "[m]arsh grass removal from the canal is considered not eligible as its removal is considered to be dredging." *Id.* at 3; *see also id.* at

14 (noting that some debris may not be considered eligible for funding because it "is not considered to pose an immediate threat to improved property, public health and safety, such as marsh grass, soil, and debris that is not in close proximity to improved property"). The approved PW 2981 authorized funding for a total of $7350 for debris removal. *Id*. at 1.

Nearly a year later, FEMA amended PW 2981 with PW 2981-1. *See* FEMA, Project Worksheet Report 2981-1 (Jan. 10, 2007). The new PW altered the work description to include removal of a newly discovered submerged vehicle that FEMA determined was eligible for funding. In addition, FEMA amended the cost figure to cover the use of an amphibious crawler and a barge to clear the C&D debris, the boat, and the submerged vehicle, which could not be cleared by conventional means. PW 2981-01 thus documented the total costs to be $31,979 (the original $7350 plus new costs totaling $24,629).

In an email dated May 4, 2007, Patrick W. Ruland, FEMA's Public Assistance officer, proposed an extension of the work to include the removal of some marsh grass to ensure flow within the canals. *See* Email from Patrick W. Ruland, Public Assistance Officer, to Joe Shoemaker et al. (May 4, 2007). Ruland notified the Parish that FEMA was willing to reconsider funding the removal of some marsh grass from the Coin du Lestin canals. *Id*. He wrote:

> FEMA understands that the Parishes [sic] two primary concerns are the removal of debris to reduce the threat of future flooding and to return the canals to a functional capacity for the residences. But with these waters being tertiary, non-navigable waterways, our concern is primarily to reduce further damages from occurring due to flood waters. The amounts of marsh grass removal FEMA PA would consider reasonable to allow the waters to flow for drainage purposes at the Coin Du Lestin area will be limited to 2' deep x 10'

7

wide . . . . The debris removal will only be eligible at those areas of the waterways in which water flow is severely restricted.

*Id.* The record does not reveal that either FEMA or the Coin du Lestin community pursued this proposal or completed a new PW before the Parish filed the present suit.

## B.    Procedural History

On June 22, 2007, the Parish filed a five-count complaint against FEMA and DHS based on FEMA's refusal to fully fund the Parish's Request for Public Assistance seeking removal of all debris and sediment from the Coin du Lestin canals to a depth of eight feet. The Parish's first count alleged that defendants violated the Stafford Act, 42 U.S.C. §§ 5170 and 5173, by wrongfully refusing to fund dredging of the Parish's Coin du Lestin canals. The second count alleged that defendants were liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, for the same conduct. The third count alleged that defendants violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 553, and the Stafford Act, 42 U.S.C. § 5165c, because FEMA's refusal to approve funding constituted a substantive rule change about which FEMA never provided the public with notice and an opportunity to comment. The fourth count alleged that defendants deprived the Parish of its right under the Stafford Act, *id.* § 5189a, and corresponding regulations, to appeal FEMA's denial of the requested funding. Lastly, the fifth count alleged that defendants violated the Stafford Act, *id.* § 5151, by failing to treat the residents of the Coin du Lestin community in a fair and equitable manner because FEMA funded similar projects in other communities. Plaintiff sought an order requiring FEMA to cover the costs of debris removal, a declaratory judgment that the government's policies violated

8

the Stafford Act, and a monetary judgment in tort for sums required for debris removal.

Defendants moved to dismiss the case for lack of subject matter jurisdiction on the grounds of sovereign immunity under 42 U.S.C. § 5148 and of failure to exhaust administrative remedies. In support of their motion, defendants submitted an affidavit from Eddie Williams, FEMA's Deputy Public Assistance Officer. Williams confirmed that while FEMA did not initially agree that "complete removal of sediment was necessary to reduce an immediate threat of flooding," it has since "determined that sufficient flood hazards exist to allow for the removal of sediment (and swamp grass) to clear a 10 ft. wide by 2 ft. deep channel at drainage culverts throughout the approximately 1.5 miles of canals in the community." He also stated that a new version of PW 2981 was being considered and that "additional information from the Parish was needed."

In response to defendants' motion, the Parish argued that the Stafford Act, the FTCA, and the APA waived the United States's sovereign immunity for purposes of its suit because the Stafford Act and its corresponding regulations mandated that FEMA provide funding for debris removal from the Coin du Lestin canals. Furthermore, the Parish contended that Williams's affidavit showed that FEMA determined that there was an immediate threat of flooding from the Coin du Lestin canals, thus mandating funding of the requested dredging to remove the immediate threat.

The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction. The court first noted that § 702 of the APA waives sovereign immunity for claims alleging that a person suffered a legal wrong because of agency action, within the meaning of a relevant statute. The court also noted,

however, that the waiver of sovereign immunity is inapplicable when "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The court thus weighed whether the Stafford Act's discretionary function exception, which precludes liability "for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency," 42 U.S.C. § 5148, applied to the Parish's claims. Noting the similarities between § 5148 and the FTCA's similar discretionary function exception to its waiver of sovereign immunity for tort claims, *see* 28 U.S.C. § 2680(a), the district court concluded that the same test for discretionary function applied under both statutes. It, therefore, applied the two-part test that the Supreme Court first described in *Berkovitz v. United States*, 486 U.S. 531 (1988), which defined discretionary functions under § 2680(a). Under this test, the district court held "that FEMA's decisions whether and to what extent to remove the debris from the Coin du Lestin canals is a matter of judgment or choice and this judgment is of the kind that the discretionary function exception was designed to shield."[2] Thus, the district court held that the United States has not waived sovereign immunity for plaintiff's claims because they arise from discretionary functions that preclude suit under § 5148 and accordingly dismissed the suit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[2] The district court did not distinguish between the various counts of plaintiff's complaint when granting defendants' motion to dismiss. It instead applied § 5148 to all claims to reach its universal conclusion that the government did not waive sovereign immunity for the relevant funding decisions under the Stafford Act. Whatever the validity of the district court's generalization, plaintiff presents no argument to us related to the district court's dismissal of counts four and five of the Parish's complaint, which raise claims arising from functions unrelated to such funding decisions. We will thus focus only on the issue as briefed by plaintiff.

On December 21, 2007, the Parish filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. The Stafford Act's Discretionary Function Exception

"We review a district court's dismissal for lack of subject matter jurisdiction de novo." *Stiles v. GTE Sw., Inc.*, 128 F.3d 904, 906 (5th Cir. 1997). "In our de novo review . . ., we apply the same standard as does the district court . . . ." *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (internal quotation marks and citation omitted). Under our traditional explication of the standard applied by the district court, the district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Here, the district court did not resolve any disputed facts, so we, as did the district court, "consider the allegations in the plaintiff's complaint as true." *Id.* at 412. "[O]ur review is limited to determining whether the district court's application of the law is correct" and, to the extent its "decision [was] based on undisputed facts, whether those facts are indeed undisputed." *Id.* at 413. We then ask if dismissal was appropriate. *See United States v. Gaubert*, 499 U.S. 315, 327 (1991) ("'accept[ing] all of the factual allegations in [the plaintiff's] complaint as true' and ask[ing] whether the allegations state a claim sufficient to survive a motion to dismiss" (quoting *Berkovitz*, 486 U.S. at 540)).

We are asked to determine whether the United States has waived sovereign immunity for its agencies' decision not to fund the Parish's requested debris removal. Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (holding that the party asserting the jurisdiction of a federal court bears the burden); *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) ("The party claiming federal subject matter jurisdiction has the burden of proving it exists."); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (holding that, when faced with factual attack on federal court's subject matter jurisdiction, plaintiff bears the burden "of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction"); *accord Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981) ("A party who sues the United States has the burden of pointing to a congressional act that gives consent." (citing *Malone v. Bowdoin*, 369 U.S. 643 (1962))). At the pleading stage, plaintiff must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception.[3]

---

[3] While the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity, it is less clear whether the plaintiff or the government bears the burden of proof to show whether a discretionary function exception to a waiver of sovereign immunity applies. Our sister courts of appeals are split. Some place the burden on the plaintiff to show that the government's conduct does not fall within the discretionary function exception. *See Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998). Others place the burden on the government to show that the exception applies. *See Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008); *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008) (citing *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992)); *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir. 1952). Other courts of appeals have declined to decide the issue, being uncertain whether the Supreme Court in *Gaubert* intended to place the burden of proving the non-applicability of the exception on the plaintiff as a consequence of its holding that "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987) ("The doctrine of sovereign immunity is inherent in our constitutional structure and . . . renders the United States [and] its departments . . . immune from suit except as the United States has consented to be sued."). Because "[s]overeign immunity is jurisdictional in nature," *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), Congress's "waiver of [it] must be unequivocally expressed in statutory text and will not be implied," *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citation omitted); *see*

---

that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," 499 U.S. at 324–25. *See Sharp v. United States*, 401 F.3d 440, 443 n.1 (6th Cir. 2005) (declining to decide whether *Gaubert* altered its earlier view that the government bears the burden); *Ochran v. United States*, 117 F.3d 495, 504 n.4 (11th Cir. 1997) (refusing to decide which party bears the burden, but placing the "burden of production of the policy considerations that might influence the challenged conduct . . .on the Government" after the plaintiff alleged facts facially placing the claims outside of the exception); *Autery v. United States*, 992 F.2d 1523, 1526 n.6 (11th Cir. 1993) (refusing to decide which party bears the burden); *Kiehn v. United States*, 984 F.2d 1100, 1105 n.7 (10th Cir. 1993) (refusing to decide which party bears the burden). *But see Prescott*, 973 F.2d at 702 n.4 (holding that the government bears the burden because *Gaubert* decided that "plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss" but "did not deal with the burden of proof question").

In the context of a motion to dismiss, however, the courts have widely held that the plaintiff must invoke jurisdiction by pleading facts that facially allege matters outside of the discretionary function exception. *See Prescott*, 973 F.2d at 702 n.4; *Blakely v. U.S.S. Iowa*, 991 F.2d 148, 154 (4th Cir. 1993); *Autery*, 992 F.2d at 1526 n.6; *Kiehn*, 984 F.2d at 1105; *Carlyle v. U.S., Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982). Relying on *Gaubert* and without addressing which party bears the ultimate burden of proving the applicability of the exception, this court agreed that a plaintiff must "allege a claim sufficient to survive a motion to dismiss based on the 'discretionary function' exception." *ALX El Dorado, Inc. v. Sw. Sav. & Loan Ass'n/FSLIC*, 36 F.3d 409, 411 n.13 (5th Cir. 1994). On this motion to dismiss, therefore, the Parish must advance a claim that is facially outside the discretionary function exception in order to survive the motion to dismiss, regardless of which party bears the ultimate burden of proof.

*also Petterway v. Veterans Admin. Hosp.*, 495 F.2d 1223, 1225 n.3 (1974) ("It is well settled . . . that a waiver of sovereign immunity must be specific and explicit and cannot be implied by construction of an ambiguous statute.").

Plaintiff argues that Congress waived sovereign immunity for its present claims in three statutes: the FTCA, the APA, and the Stafford Act. Plaintiff alleges a claim under the FTCA for wrongful denial of funding under the Stafford Act. The FTCA authorizes suits against the United States for damages arising from:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Thus, the FTCA waives sovereign immunity and permits suits against the United States sounding in state tort for money damages. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006). As long as state tort law creates the relevant duty, the FTCA permits suit for violations of federal statutes and regulations. *See Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (en banc) ("[T]he violation of a federal statute or regulation does not give rise to FTCA liability unless the relationship between the offending federal employee or agency and the injured party is such that the former, if a private person or entity, would owe a duty under state law to the latter in a *nonfederal* context. If the requisite relationship and duty exist, then the statutory or regulatory violation may constitute or be evidence of negligence in the

14

performance of that state law duty.").[4]   The FTCA, however, excepts discretionary functions and duties from this waiver of sovereign immunity.  *See* 28 U.S.C. § 2680(a).  This "discretionary function exception" provides that the waiver of sovereign immunity in § 1346(b) does not apply to:

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.*  The "discretionary function exception is thus a form of retained sovereign immunity." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 190 (2d Cir. 2008).  It "'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Berkovitz*, 486 U.S. at 536 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 808 (1984)).  It is intended to "assure protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions." *Dalehite v. United States*, 346 U.S. 15, 26–27 (1953) (citation omitted).  In this case, plaintiff alleges a claim under the FTCA for FEMA's purported wrongful denial of nondiscretionary funding of the Parish's requested debris removal.

Plaintiff also brings a claim pursuant to the APA for improper rulemaking under the Stafford Act.  The APA is a broadly applicable statute that "undoubtedly evinces Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative

---

[4] Because the Parish appeals the district court's grant of defendants' motion to dismiss for lack of subject matter jurisdiction, we need not consider the merits of whether the Parish's claims give rise to tort liability under Louisiana law.

officials." *Califano v. Sanders*, 430 U.S. 99, 104 (1977). Section 702 of the APA authorizes suits against the United States through a limited waiver of sovereign immunity for "relief other than money damages" related to an agency's regulatory action. *See* 5 U.S.C. § 702. The APA, moreover, permits judicial review of claims for specific relief that result in the payment of money—such as a claim seeking a declaratory judgment ordering that an agency comply with a mandatory funding requirement—because such actions are not for "money damages," in the form of compensation for a loss that the plaintiff has suffered or will suffer but for specific relief related to agency action. *See Bowen v. Massachusetts*, 487 U.S. 879, 893, 901 (1988). However, the waiver does not apply "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In this case, the Parish alleges that FEMA's denial of full funding for its requested debris removal violated the APA, *see id.* § 553, and the Stafford Act, *see* 42 U.S.C. § 5165c, by altering FEMA's policy without providing notice and an opportunity to be heard.

Thus, plaintiff has alleged claims under two generally applicable statutes, the FTCA and the APA, for violations of the Stafford Act and its corresponding regulations. Although the Stafford Act does not contain a waiver of sovereign immunity, *see Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1001 (9th Cir. 1998)*,* it does contain a discretionary function exception to governmental liability nearly identical to the one contained in the FTCA. *See* 42 U.S.C. § 5148. The Stafford Act's discretionary function exception provides that the United States will not be liable for:

> [A]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part

> of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

*Id.* The Stafford Act's discretionary function exception exists, despite the lack of an express waiver of sovereign immunity, to protect the government from liability for claims based on its discretionary conduct brought pursuant to the FTCA, APA, or other statutes of general applicability.[5] Nonetheless, this provision "preclude[s] judicial review of all disaster relief claims based upon the discretionary actions of federal employees." *Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir. 1987).

The government argues that the Stafford Act's discretionary function exception applies to the funding decisions that form the basis of the present claims. The Parish counters that it has alleged facts that give rise to a nondiscretionary duty to provide funding—i.e., one not sheltered by the discretionary function exception. The first contention between the parties thus is the meaning of the term "discretionary function or duty" within the Stafford

---

[5] Because the Parish in this case alleges claims properly brought pursuant to the APA or the FTCA, we need not consider the validity of claims brought pursuant to the Stafford Act that are not augmented by APA or FTCA causes of action.

Act's discretionary function exception.[6] Neither the Supreme Court nor this court has considered this question.

Plaintiff argues that the Supreme Court's interpretation of the term "discretionary function or duty" under § 2680(a) of the FTCA applies to define the same term under § 5148 of the Stafford Act because of the near identical phrasing of the two provisions. For the first time on appeal and despite its success under the Parish's proposed definition in the district court, the government argues that the Stafford Act's structure and its extraordinary purpose dictate that its discretionary function exception applies more broadly. According to the government, "any activity of the United States undertaken to carry out the provisions of the Stafford Act will necessarily trigger § 5148 Stafford Act immunity." Thus, the government now recommends interpreting § 5148 to bar claims with a "propinquity" to a disaster and a "close substantive nexus" to disaster assistance.[7]

---

[6] Both parties agree that the Stafford Act's discretionary function exception governs the current dispute. We note that, for this case, our conclusion regarding the applicability of § 5148 will dictate the outcome of the FTCA claims, whether § 5148 controls over the more general discretionary function exception in § 2680(a), *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general . . . ."); *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 428 (5th Cir. 1989) (applying the specific Flood Control Act of 1938, 33 U.S.C. § 702c, instead of the general FTCA), or § 2680(a)'s similar discretionary function exception applies concurrently with that of § 5148, *see* § 2680(a) (defining the inapplicability of the FTCA's waiver of sovereign immunity for discretionary conduct). Our conclusion will also dictate the outcome of the APA claims. *See* 5 U.S.C. § 701(a)(1) (defining the inapplicability of § 702's waiver of sovereign immunity where the substantive statute precludes review).

[7] We will not entertain legal issues raised for the first time on appeal except "in extraordinary instances when such consideration is required to avoid a miscarriage of justice." *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000); *see also, e.g.*, *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 573 (5th Cir. 2002). The government had the opportunity to present its argument to the district court, so we find no

We hold that "discretionary function or duty" has the same meaning in § 5148 as it does in § 2680(a). We reach this conclusion because the relevant language of the two provisions is identical, because anecdotal evidence shows that Congress intended to incorporate § 2680(a)'s standard into § 5148, and because our sister courts of appeals and most district courts have looked to § 2680(a) case law when applying § 5148. Whatever the arguable differences between the two statutes, those differences are not at play here, and we conclude that the meaning of "discretionary function or duty" is the same under § 5148 and § 2680(a).

"The starting point in statutory interpretation is 'the language [of the statute] itself.'" *United States v. James*, 478 U.S. 597, 604 (1986) (citation

extraordinary instance. And, as we affirm the district court's conclusion that the government prevails on the jurisdictional issue, the government will suffer no miscarriage of justice from our decision not to address its argument. We are particularly reluctant to address the government's argument here, where, because the government prevailed in district court, it raises its new argument in its appellees' brief, requiring the appellant to respond in a reply brief.

　　　The government's argument—that "any activity of the United States undertaken to carry out the provisions of the Stafford Act will necessarily trigger § 5148 Stafford Act immunity"—is about the content of the Stafford Act's substantive provisions, not about the meaning of its discretionary function exception; therefore, we also refuse to decide the issue because to do so would require us to reach unnecessary conclusions about the applicability of the discretionary function exception to substantive provisions of the Stafford Act (and its corresponding regulations) not specifically raised by the Parish in this case. By refusing to address the government's newly proposed paradigm, we in turn do not need to confront the plaintiff's responsive arguments that (1) the government's proposed standard lacks any support in the statute or case law; (2) when Congress wants to prevent all liability, it knows how to expressly do so, *cf.* Flood Control Act of 1938, 33 U.S.C. § 702c ("No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."); and (3) the government's proposed rule strips the term "discretionary" of any meaning in the Stafford Act, *see Berkovitz*, 486 U.S. at 538 ("[W]e intend specifically to reject the Government's argument . . . that the exception precludes liability for any and all acts arising out of the regulatory programs of federal agencies. That argument is rebutted first by the language of the exception, which protects 'discretionary' functions, rather than 'regulatory' functions.").

omitted, alteration in original), *abrogated in non-relevant part by Central Green Co. v. United States*, 531 U.S. 425 (2001). We are bound to apply "the plain language of the statute, especially where . . . there is nothing in the statute or its legislative history to indicate a contrary intent." *In re DP Partners Ltd.*, 106 F.3d 667, 671 (5th Cir. 1997). Moreover, "as a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001) (citations omitted). We must nonetheless respect differences in the texts and the overall statutory schemes to ensure that the purposes of both acts are served by interpreting them in the same manner. *See Smith v. City of Jackson*, 351 F.3d 183, 189 (5th Cir. 2003).

In this case, the language of § 5148 of the Stafford Act mirrors that of § 2680(a) of the FTCA. *Compare* § 5148 (exempting claims based on "the exercise or performance of or the failure to exercise or perform a discretionary function or duty"), *with* § 2680(a) (exempting claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty"). Both provisions prevent subject matter jurisdiction arising from the same type of conduct—"a discretionary function or duty." Thus, we hold that the phrase "discretionary function or duty" has the same meaning under both statutes.

Ancillary evidence supports our conclusion. To start, the legislative history suggests that the nearly identical statutory language is the result of Congress's intentional incorporation of § 2680(a) into the Stafford Act. *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 189 & n.22 (citing H.R. Rep.

No. 81-2727, at 1, 7 (1950) (Letter from Frank Pace, Jr., Sec'y of the Army, to Hon. Will M. Whittington, Chairman, Comm. on Pub. Works, House of Representatives (June 7, 1950) (recording that the Department of Defense recommended amending an early draft of the Stafford Act to ensure that "the Federal Government shall not be liable for claims based upon the exercise of or the failure to exercise a discretionary duty *as provided in section 2680(a) of title 28, United States Code*" (emphasis added)))). Moreover, our conclusion is in agreement with the other courts of appeals to consider the issue. *See, e.g.*, *id.* at 189–93 ("[W]e consider the policies for the FTCA discretionary function exception, and prior interpretations of that exception, for guidance on the nature of the Stafford Act discretionary function immunity."); *Dureiko v. United States* (*Dureiko II*), 209 F.3d 1345, 1351, 1353 (Fed. Cir. 2000) (applying Supreme Court precedent interpreting § 2680(a) to resolve the applicability of § 5148); *Graham*, 149 F.3d at 1006 (same); *Rosas*, 826 F.2d at 1008–10 (same).[8] In this regard, the Second Circuit's discussion in *In re World Trade Center Disaster Site Litigation* is particularly instructive. Considering whether the district court's holding that § 5148 did not provide immunity to suit was an appealable interlocutory order, the Second Circuit held:

> The Stafford Act is not the only federal statute that provides a "discretionary function" immunity. The [FTCA] also contains a

---

[8] *See also, e.g.*, *Watson v. FEMA*, No. H-06-1709, 2006 WL 5249703, at *3 (S.D. Tex. May 30, 2006); *Diversified Carting, Inc. v. City of N.Y.*, 423 F. Supp. 2d 85, 91–92 (S.D.N.Y. 2005); *McWaters v. FEMA*, 408 F. Supp. 2d 221, 228–29 (E.D. La. 2005); *City of San Bruno v. FEMA*, 181 F. Supp. 2d 1010, 1014–15 (N.D. Cal. 2001); *Cal.-Nev. Methodist Homes, Inc. v. FEMA*, 152 F. Supp. 2d 1202, 1205–06 (N.D. Cal. 2001); *United Power Ass'n v. FEMA*, No. A2-99-180, 2000 WL 33339635, at *2–3 (D.N.D. Sept. 13, 2000); *Sunrise Vill. Mobile Home Park v. Phillips & Jordan, Inc.*, 960 F. Supp. 283, 284 (S.D. Fla. 1996); *Dureiko v. Phillips & Jordon, Inc.* (*Dureiko I*), No. 95-1441, 1996 WL 825402, *1–2 (S.D. Fla. Apr. 29, 1996).

discretionary function exception. The statutes employ practically identical language: both provide protection for "the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a [F]ederal agency or an employee of the [Federal] Government. . . ." Furthermore, we have previously considered the FTCA in analyzing other discretionary function immunities. Finally, it appears that the discretionary function defense in the Stafford Act was based upon the discretionary function exception in the FTCA. Thus, we consider the policies for the FTCA discretionary function exception, and prior interpretations of that exception, for guidance on the nature of the Stafford Act discretionary function immunity.

521 F.3d at 188–89 (internal citations omitted, some alterations in original). In light of the similarity in the statutory texts and this persuasive precedent, we too "consider the policies for the FTCA discretionary function exception, and prior interpretations of that exception, for guidance on the nature of the Stafford Act discretionary function immunity." *Id.* at 189.

The government's counterarguments do not show that Congress intended "a discretionary function or duty" to have a different meaning in § 5148 than in § 2680(a). The government first attempts to distinguish the two provisions by noting that § 2680(a) is "a passive exception" to a waiver of sovereign immunity while § 5148 is "an active prohibition" against the imposition of liability based on a statute that does not contain an express waiver of sovereign immunity. This structural distinction, while relevant to the question of whether Congress waived sovereign immunity in the Stafford Act, does not answer the question at hand—what constitutes a "discretionary function or duty."

The government also attempts to distinguish the two statutes by reference to the few differences in the statutes' wordings. Where relevant, however, these differences support our holding. First, § 5148 contains the phrase "in carrying

out the provisions of this chapter"; whereas, § 2680(a) applies to all discretionary conduct from the myriad substantive sources of FTCA liability. This distinction narrows the applicability of § 5148 to discretionary functions under the Stafford Act but, again, does not clarify the meaning of "discretionary function or duty." Second, § 5148 bars "[a]ny claim." Of course, § 2680(a) also mentions "any claim," but it only applies to tort claims for monetary relief (the only available relief under the FTCA). Although § 5148 covers all *types* of claims brought with respect to the Stafford Act, it does not cover all *conduct*, and our goal here is to identify the discretionary conduct that it covers. This difference in statutory language is not inconsistent with our conclusion.

This distinction, however, undermines the government's next argument—that interpreting § 2680(a) and § 5148 consistently would render the latter superfluous. Under our construction and contrary to the government's assertion, because § 5148 applies to any claim, it has an independent operational effect beyond that of § 2680(a): Where § 5148 is applicable, the government retains sovereign immunity for claims that are based on discretionary functions or duties, whether alleged under the FTCA, *see Dureiko I*, 1996 WL 825402, *2; *cf. Gaubert*, 499 U.S. at 324; the APA, *see Rosas*, 826 F.2d at 1008; or, ostensibly, the Contract Disputes Act, 41 U.S.C. § 601-613, *cf. Dureiko II*, 209 F.3d at 1353.[9] In support of its argument that § 5148 would be superfluous under our reading,

_____

[9] We also note that § 2680(a), unlike § 5148, prohibits claims "whether or not the discretion involved be abused." Thus, the FTCA may protect against abuses of discretion, while the Stafford Act may not. *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 189 n.21. We need not decide whether this distinction has any meaning in this case because the Parish has not argued that the government abused its discretion (it has limited its argument to whether the government had any discretion at all). We note this difference here only as additional evidence that our holding does not render § 5148 superfluous.

the government contends that because the § 2680(a) existed at the time of the passage of the Stafford Act, Congress must have intended to provide § 5148 with a distinct meaning. Our conclusion that § 5148 is not superfluous nullifies this argument, and in any case, the legislative history does not support the government's position. The government offers the statement of Representative Whittington, Chairman of the House of Representatives Committee on Public Works, during the House of Representative's floor debate on the Stafford Act:

> We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government may not be sued. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other relief acts, suits aggregating millions of dollars because citizens have averred that the agencies and employees of Government made mistakes. We have put a stipulation in here that there shall be no liability on the part of the Government.

96 Cong. Rec. 11895, 11912 (1950); *see also* H.R. Rep. No. 81-2727, at 3 (report of Rep. Whittington) (summarizing that the proposed legislation contained an amendment "to provide that the Federal Government shall not be liable for any claims based upon the proper exercise or performance of a function or duty on the part of any Federal agency or any employee of the Government in carrying out the provisions of the section"). Placed in proper context and in light of the clear language of § 5148, this statement is unpersuasive. Representative Whittington made his statement immediately after the text of § 5148, including the phrase "a discretionary function or duty," was read to the House of Representatives. 96 Cong. Rec. at 11912. Thus, Representative Whittington's statement was in the context of the proposed statute's discretionary language.

24

In addition, earlier in the debate, Representative Whittington commented that the version presented for passage was amended to ensure "that the Government shall not be liable for any claim based upon the performance, or the failure to perform, a *discretionary* function on the part of an agency or employee of the government." *Id.* at 11897 (emphasis added). Thus, Representative Whittington verbalized § 5148's focus on discretionary conduct.[10]  Overall, Representative Whittington's comment and one sentence from the committee's report cannot fairly be construed to override the clear, unambiguous language of § 5148.  Our construction of "discretionary function or duty" thus does not render § 5148 superfluous and promotes a consistent application of congressional language intended to the have the same meaning.  We therefore reject the government's arguments and conclude that "a discretionary function or duty" has the same meaning within § 5148 as it does within § 2680(a).  Thus, we will rely on precedent interpreting that phrase under § 2680(a).

## B.  The Funding Decision

---

[10] As discussed above, the Report of the Committee on Public Works that was submitted to the House of Representatives reveals that § 2680(a) was amended to incorporate the discretionary function analysis contained in § 2680(a) at the suggestion of the Department of the Army.  *See* H. R. Rep. No. 81-2727, at 7 (Letter from Frank Pace, Jr., Sec'y of the Army, to Hon. Will M. Whittington, Chairman, Comm. on Pub. Works, House of Representatives (June 7, 1950) (recommending an amendment so that "the Federal Government shall not be liable for claims based upon the exercise of or the failure to exercise a discretionary duty *as provided in section 2680(a) of title 28, United States Code*" (emphasis added))); *see also id.* at 8 (Letter from Jess Larson, Adm'r, Gen. Servs. Admin., to Hon. F. J. Lawton, Dir., Bureau of the Budget (May 9, 1950) (concurring with this recommendation)); *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 189 & n.22 ("[I]t appears that the discretionary function defense in the Stafford Act was based upon the discretionary function exception in the FTCA.").  Thus, the government's citation to the summary explanation of the amendment contained in the same report, *see id.* at 3, is an unpersuasive gloss on the more complex legislative history.

We now determine the applicability of the discretionary function exception under § 5148 of the Stafford Act to this case by turning to the well-established precedent defining discretionary conduct under § 2680(a) of the FTCA. We hold that under that precedent, FEMA's decision not to approve funding for sediment dredging in the Coin du Lestin canals is discretionary and that § 5148 therefore bars the Parish's current claims.

The Supreme Court has developed a two-part test for determining whether agency conduct qualifies as a discretionary function or duty under this exception. *See Gaubert*, 499 U.S. at 322–23 (citing *Berkovitz*, 486 U.S. at 536–37). First, the conduct must be a "matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 536. "The exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536) (alteration in original). Thus, "'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *Id.* (quoting *Varig Airlines*, 467 U.S. at 813). If a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary. *See id.* at 329. On the other hand, "[t]he requirement of judgment or choice is not satisfied" and the discretionary function exception does not apply "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536).

Second, "even 'assuming the challenged conduct involves an element of judgment,'" we must still decide that the "'judgment is of the kind that the

discretionary function exception was designed to shield.'" *Id*. at 322–23 (quoting *Berkovitz*, 486 U.S. at 536); *see also Varig Airlines*, 467 U.S. at 813. "Because the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 499 U.S. at 323 (quoting *Berkovitz*, 486 U.S. at 537). In this regard, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id*. at 324.

In this case, plaintiff argues that the Stafford Act, regulations promulgated pursuant to it, Recovery Policy 9523.13, the Ward Memorandum, and PW 2981.1 created a nondiscretionary duty on FEMA to fund its requested debris and sediment removal in the Coin du Lestin canals to a depth of eight feet. Under the first prong of the *Berkovitz* test, plaintiff asserts that these authorities prevented FEMA from exercising any choice in whether to fund the dredging. Plaintiff's claim is predominately based on two deductions—first, that once FEMA declared debris removal from private property in the Parish to be in the public interest, it had no discretion to deny funding for the Parish's request in this specific case; and second, that once FEMA engineers determined that some threat existed to improved property, public health, or safety, it lacked discretion to deny funding for the debris removal. We conclude that, in this case, the cited authorities do not create a nondiscretionary duty mandating that FEMA fund the Parish's requested dredging of the Coin du Lestin canals.

27

Sections 5170b and 5173 of the Stafford Act grant FEMA authority to fund debris removal from private property in designated disaster areas. Those provisions, however, are cast in discretionary terms. Section 5107b states that: "Federal agencies *may* on the direction of the President, provide assistance essential to meeting immediate threats to life and property resulting from a major disaster." § 5170b(a) (emphasis added). Section 5173, likewise, states that "[t]he President, whenever he determines it to be in the public interest, *is authorized* . . . to make grants to any State or local government . . . for the purpose of removing debris . . . resulting from a major disaster from publicly or privately owned lands and waters." § 5173(a)(2) (emphasis added). The uses of the words "may" and "is authorized" indicate that government approval of assistance for debris removal is discretionary. *See, e.g.*, *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1998) (stating that the use of the word "may" shows a legislature's intention to bestow discretion on an agency).

Nor do the corresponding federal regulations create a mandatory duty. The regulations permit FEMA to provide assistance for removal of eligible debris if in the public interest, but they do not mandate assistance even where that eligibility criterion is met. *See* 44 C.F.R. § 206.224(a) ("Upon determination that debris removal is in the public interest, the Regional Director *may* provide assistance for the removal of debris and wreckage from publicly and privately owned lands and waters." (emphasis added)); *see also Lockett*, 836 F. Supp. at 854 (holding that "[e]ven where an applicant meets the requirements of eligibility, the language, by including the term 'may,' signifies that FEMA has the discretion to award that assistance" (citation omitted)).

28

Similarly, Recovery Policy 9523.13, the Ward Memorandum, and PW 2891.1 do not mandate that FEMA fund the Parish's request for dredging. Recovery Policy 9523.13 states that FEMA has "authority" to fund debris removal, § 6(A), and that "debris removal from private property *may* be in the public interest and thus *may* be eligible for reimbursement," § 6(C) (emphasis added).[11] Thus, under Recovery Policy 9523.13, funding decisions remain discretionary. Through the Ward Memorandum, FEMA favorably exercised its authority to label the Parish eligible for public-interest-based debris removal funding; however, the Ward Memorandum does not create a nondiscretionary duty to fund any or every request for debris removal. In addition, PW 2891.1, even if viewed as an agency confirmation that some threat to improved property, public health, and safety existed, does not create a nondiscretionary duty to fund the debris removal presently sought by the Parish. While PW 2891.1 concludes that funding to remove the C&D debris, the boat, and the submerged vehicle was necessary to eliminate the threats to improved property, public health, and safety from further flooding, it provides no basis to conclude that additional dredging of sediment and marsh grass was necessary to reduce those threats. Finally, we note that, viewed as a comprehensive regulatory scheme, the combined import of these sources does not give rise to a nondiscretionary

---

[11] Defendants contend that Recovery Policy 9523.13 provides guidance only for the removal of debris from commercial private property. Its unambiguous text, however, states that it applies to the removal of debris from private property, both commercial and noncommercial. *See, e.g.*, Recovery Policy 9523.13, §§ 4, 6(A)–(C), 7(A)–(C), 7(G)–(H). This conclusion is confirmed by the earlier September 7, 2005 version of the same policy. That version did not mention commercial property. The later October 23, 2005 version (contained in the record below) amended the September 7 version to provide *additional* guidance related to debris removal from commercial private property, *see id.* §§ 4, 6(D), 7(D), while preserving the original guidance related to noncommercial private property.

29

funding mandate.[12]    Thus, we conclude that under the first prong of the *Berkovitz* test, FEMA was under no nondiscretionary duty to fund dredging.

Under the second prong of the *Berkovitz* test, we hold that funding decisions related to the extent of debris removal that is necessary to protect improved property, public health, and safety are exactly the type of public policy considerations that § 5148 shields from judicial scrutiny.  *See Sunrise Vill. Mobile Home Park*, 960 F. Supp. at 286 ("[T]he Government's decisions on when, where, and how to remove debris after a major disaster are exactly the sort of policy-imbued decisions that fall within the second prong of the discretionary function exception.").  Here, FEMA engineers determined that removal of C&D debris, the boat, and the submerged vehicle was necessary to protect the community but that dredging was not necessary.  Eligibility determinations, the distribution of limited funds, and other decisions regarding the funding of eligible projects are inherently discretionary and the exact types of policy decisions that are best left to the agencies without court interference.

Thus, we hold that in this case, the Stafford Act, its regulations, and related agency guidance do not give rise to a mandatory duty.  They instead permit discretionary, policy-oriented choices that cannot be the basis for the court's subject matter jurisdiction.  As a result, FEMA's decision not to approve

---

[12] Upon further review, FEMA concluded that dredging may be necessary to a depth of two feet in certain drainage culverts at high risk for flooding, and, in a later affidavit attached to its motion to dismiss, FEMA extended this conclusion to Coin du Lestin's entire canal system.  While FEMA's later attempts to aid Coin du Lestin with funding for partial dredging might have been the first step to a mandatory duty for FEMA to provide funding for those specific activities, the record does not contain a PW memorializing any such conclusion.

funding for sediment dredging in the Coin du Lestin canals is discretionary, and § 5148 therefore bars the Parish's current claims.[13]

## III. CONCLUSION

For the above explained reasons, we AFFIRM the district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).

---

[13] Because § 5148 applies, it bars any claim—whether alleged under the FTCA or APA. *See* 5 U.S.C. § 701(a); 28 U.S.C. § 2680(a); *Rosas*, 826 F.2d at 1008 (holding that Congress intended to "preclude judicial review of all disaster relief claims based upon the discretionary actions of federal employees").