# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

No. 12-10080

Lyle W. Cayce
Clerk

BUILDING FOUR SHADY OAKS MANAGEMENT L.P.,

Plaintiff-Appellant

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for
Guaranty Bank, formerly a Texas Banking Company,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
3:10-CV-970

Before DAVIS, JONES, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

In its capacity as receiver for an insolvent bank, the Federal Deposit Insurance Corporation ("FDIC") repudiated a long-term commercial lease to which the failed bank was a party. The other party to the lease brought suit, alleging that the FDIC did not repudiate the lease within a reasonable period of time. Following a bench trial, the district court dismissed the suit relying in part on its finding that appellant was not prejudiced by the delayed lease

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10080

cancellation. We agree with the district court that prejudice was a relevant consideration in determining the reasonableness of the FDIC's actions and whether it was timely.

## I.

In 2007, Guaranty Bank ("Guaranty") was a national bank whose deposits were insured by the FDIC. On February 14, 2007, Guaranty entered into a commercial lease agreement with Building Four Shady Oaks Management L.P. ("Building Four"). Under the lease, Guaranty leased 3,740 square feet of commercial space in Southlake, Texas from Building Four for a period of ten years beginning May 15, 2008.

On August 21, 2009, Guaranty was declared insolvent and the FDIC was appointed as receiver, responsible for managing Guaranty's assets and winding up its affairs. Part of the FDIC's role as receiver was to assume or repudiate contracts to which Guaranty was a party. On January 25, 2010, the FDIC notified Building Four that the FDIC was repudiating the Guaranty Lease, effective March 31, 2010.

Building Four brought suit against the FDIC, alleging that the FDIC failed to repudiate the lease within a reasonable period of time. Building Four sought damages for breach of contract in the amount of the rent and expenses due under the lease. The FDIC argued that its delay in repudiating the lease was reasonable under the circumstances and in light of Building Four's inability to show that it had been harmed. Specifically, because of the state of the rental market at the time, Building Four was unable to show that it could have rented the property to anyone else during the FDIC's delay. On appeal, Building Four has not challenged the district court's factual finding that Building Four suffered no prejudice as a result of the FDIC's delay in repudiating the lease. Following a bench trial, the district court dismissed Building Four's claim, finding that based on all the facts and circumstances, and balancing Building Four's inability

2

No. 12-10080

to show that it was prejudiced, the FDIC repudiated the lease within a reasonable period.

## II.

We review a district court's findings of fact for clear error and its legal conclusions de novo. *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 543 (5th Cir. 2009).

## III.

## A.

Building Four argues first that the district court erred by considering prejudice as a factor in determining whether the FDIC repudiated a lease within a reasonable period of time.

With the passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") in 1989, Congress empowered the FDIC to serve as receiver for failed financial institutions. *FDIC v. McFarland*, 243 F.3d 876, 885 (5th Cir. 2001); 12 U.S.C. § 1821 (2006). Part of the authority the FDIC exercises as receiver is the right to repudiate contracts of the failed institution. 12 U.S.C. § 1821(e).[1]  However, Congress put a limitation on this authority:

---

[1] FIRREA provides:

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

*Id.* § 1821(e)(1).

3

No. 12-10080

> The conservator or receiver appointed for any insured depository institution . . . shall determine whether or not to exercise the rights of repudiation under this subsection *within a reasonable period* following such appointment.

*Id.* § 1821(e)(2) (emphasis added).

According to Building Four, the district court erred by considering Building Four's lack of prejudice in deciding whether the FDIC repudiated the lease "within a reasonable period" under § 1821(e)(2). This is the primary question presented by this appeal.

"The starting point in statutory interpretation is the language of the statute itself." *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 319 (5th Cir. 2009) (internal quotation marks omitted). Our primary duty is to give effect to the clear intent of Congress by "apply[ing] the plain language of the statute." *Id.* at 320.

Building Four contends that because the statute says nothing about prejudice, the district court should not have considered it when determining whether the FDIC repudiated its lease within a reasonable time. As Building Four correctly asserts, "[a]bsent a clearly expressed legislative intention to the contrary, the [statute's] language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102. 108 (1980). However, the language of § 1821(e)(2) is not nearly as conclusive as Building Four would like it to be. If courts were only permitted to consider factors explicitly mentioned in § 1821(e)(2)'s text, then they would not be able to consider *any* surrounding circumstances in deciding what is a "reasonable" period.

It is apparent from § 1821(e)(2)'s short text that Congress did not speak to the factors a court can consider in deciding what is a reasonable period of time. However, "statutory construction is a holistic endeavor," and we must give

proper consideration to a statute's wording, context, and evident purpose. *See In re Amy Unknown*, Nos. 09-41238, 09-41254, 09-31215,  2012 WL 5835827, slip op. at *8 (5th Cir. Nov. 19, 2012) (en banc)(on petition for rehearing).

While FIRREA does not define "reasonable," the parties do not dispute that whether a given period of time is reasonable necessarily depends on the surrounding facts and circumstances. *See, e.g.*, *Alford v. United States*, 709 F.2d 418, 424 n.9 (5th Cir. 1983).[2] Building Four maintains that when assessing the reasonableness of a period of time, the only relevant consideration is timing. We disagree. The only way to determine whether an action's timing is reasonable is to consider it in light of surrounding circumstances. *See id.* at 424 n.9. We agree with the district court that the prejudice caused to a lessor whose lease may be cancelled should ordinarily be considered when deciding when to act. In other words, all else being equal, it is less reasonable for the FDIC to delay its repudiation of a contract with a party when that party will suffer great damage as a result. Conversely, it is more reasonable for the FDIC to delay its repudiation of a contract if the party to the contract will suffer no damages as a result.

The decision of one of our sister circuits support this conclusion. The Eighth Circuit considered the reasonableness of the Resolution Trust Company's ("RTC")[3] repudiation of a failed savings and loan association's sale-leaseback

---

[2] *See also Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (defining "reasonable time" as something "which depends upon the particular facts and circumstances of the case.");  *Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship*, 956 F.2d 1446, 1455 (8th Cir. 1992) ("The amount of time that is reasonable must be determined according to the circumstances of each case.").

[3] Under FIRREA, the RTC statutorily succeeded the Federal Savings and Loan Insurance Corporation as conservator and receiver of certain failed financial institutions. *CedarMinn*, 956 F.2d at 1449–50 & n.5. The distinction between the RTC and the FDIC is irrelevant here, as "Congress gave the RTC all of the receivership and conservatorship powers it granted the FDIC" and the two entity's powers under § 1821(e)(2) are parallel. *See id.* at 1450 n.5.

agreement in *Resolution Trust Corp. v. CedarMinn Building Ltd. Partnership*. 956 F.2d 1446 (8th Cir. 1992). Interpreting the same provision of FIRREA at issue here, the *CedarMinn* court found, "The amount of time that is reasonable must be determined according to the circumstances of each case." *Id*. at 1455. In reaching its conclusion that the RTC's repudiation was reasonable, the *CedarMinn* court relied heavily upon the absence of prejudice to the affected party. *See id*. at 1455–56 & n.14. ("CedarMinn clearly was not prejudiced by the ongoing negotiations. There were no businesses eager to take on these leases."). At least two district courts have also explicitly integrated a consideration of prejudice into their determination of what is a reasonable period of time under § 1821(e)(2).[4]

The conclusion that prejudice may be considered in the determination of what is reasonable is bolstered by § 1821(e)'s broad grant of discretion to the FDIC. As the FDIC emphasizes, the statute permits it to repudiate "*any* contract or lease" which in its own discretion the agency determines to be burdensome. 12 U.S.C. § 1821(e)(1) (emphasis added).

Indeed, Building Four concedes in its brief that the "reasonable time" limitation is "the only non-discretionary limitation on the FDIC's repudiation power." According to Building Four, the broad discretion granted to the FDIC mandates that the reasonable time requirement be interpreted strictly. However, this assertion is at odds with both the broad discretion evident in FIRREA and with the legislative history of the statute. When § 1821(e)(2) was

---

[4] *See N.H. Assoc. Ltd. P'ship v. FDIC*, 978 F. Supp. 650, 654 (D. Md. 1997) ("Notably, [the lessor] has not presented evidence that it was harmed in any way by the ninety-day delay."); *Plymouth Mills, Inc. v. FDIC*, 876 F. Supp. 439 (E.D.N.Y. 1995) (finding that under § 1821(e)(2), "the court must take into account the . . . the balance of hurt to the litigants").

No. 12-10080

enacted, a strict 90-day limitation on the FDIC's repudiation authority was expressly rejected in favor of the open-ended "reasonable period" language.[5]

In light of the statute's language, context, and history, we therefore conclude that prejudice to other parties to a contract may be considered in a determination of what is a reasonable period of time under § 1821(e)(2) for cancellation of a failed bank's contract.

B.

Building Four next argues that if prejudice is a permissible consideration under § 1821(e)(2), the district court nonetheless erred by considering the lack of prejudice to Building Four *after* the FDIC's repudiation. According to Building Four, the district court erred by "look[ing] at the results of the FDIC's actions to determine whether they were reasonable at the time of repudiation." As support for its argument, Building Four points only to the district court's statement that the "inability of Building Four to generate any interest in the property despite a stabilization of the commercial real estate market in the fourth quarter of 2010 shows a lack of prejudice to Building Four." Building Four interprets this statement as limiting the district court's consideration to a lack of post-repudiation prejudice.

However, Building Four's argument disregards the context of the district court's statement. The opinion's analysis indicates that the court considered prejudice following the repudiation only to shed light on the question of prejudice at the time of the FDIC's repudiation. To paraphrase the reasoning of the district court, if Building Four was completely unable to rent its property for eleven months after the FDIC's repudiation, it is reasonable to infer that Building Four could not have rented the property in the two months preceding

---

[5] *CedarMinn,* 956 F.2d at 1455 n.13 (citing H.R. REP. No. 101-54(1) (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 331; 1 G. PULLES, R. WHITLOCK AND J. HOGG, FIRREA, A LEGISLATIVE HISTORY AND SECTION-BY-SECTION ANALYSIS, at 189–90 (1990)).

No. 12-10080

the FDIC's repudiation.[6] This is not an unreasonable inference, and the district court did not err by considering such evidence in its prejudice analysis.

C.

Finally, Building Four argues that the district court erred by giving dispositive weight to the factor of prejudice in its determination of whether the FDIC repudiated a lease within a reasonable period under § 1821(e)(2). According to Building Four, instead of merely considering prejudice as a factor, the district court treated prejudice to the lessor as a *prerequisite* to finding that a lease was not repudiated within a reasonable period. As support, Building Four points to the district court's statement that "[u]ltimately, the FDIC failed to notify Building Four of its intent to repudiate within a reasonable time after . . . the FDIC had made its decision to not accept the Guaranty Lease." Building Four also points to the district court's statement that "the actions taken by the FDIC in repudiating the Guaranty Lease caused delay to such an extent that the FDIC's actions cannot be characterized as reasonable given the circumstances." Reading these statements in isolation, Building Four argues that the district court found that the FDIC did not act within a reasonable period of time, but that Building Four could not complain without first establishing prejudice.

The full context of the district court's opinion shows that it correctly did not make prejudice a prerequisite to a finding of unreasonableness under § 1821(e)(2). The district court made its reasoning clear when it stated, "proof of prejudice is not a condition precedent to recovery under 12 U.S.C. § 1821(e)." In multiple places, the district court was careful to predicate its analysis on

---

[6] Contrary to Building Four's assertions, the district court specifically concluded that it was only evaluating the prejudice experienced by Building Four at the time of the FDIC's repudiation: "Building Four's assertion of prejudice can rest only on the delay in the FDIC's repudiation of the Guaranty Lease from November 19, 2009 to January 25, 2010. Any additional delay in placing the Guaranty Bank Space on the market caused by Building Four or its agents does not factor into the Court's analysis."

8

No. 12-10080

multiple factors and "the particular facts and circumstances of the case." The district court's opinion demonstrates that it considered a number of factors, including the length of the delay, the necessary bureaucratic hurdles in the FDIC, and the unprecedented state of the banking industry in 2008. Giving the district court's complete opinion a fair reading, we are satisfied that it did not consider proof of prejudice to the lessor a prerequisite to establishing Building Four's § 1821(e)(2) claim.

IV.

For the reasons stated above, the judgment of the district court is AFFIRMED.